UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREGORY LENOIR ALLMAN, JAIMOE F/K/A JOHNNY LEE JOHNSON, CLAUDE HUDSON TRUCKS P/K/A BUTCH TRUCKS and FORREST RICHARD BETTS P/K/A DICKEY BETTS, <br><br> Plaintiffs, <br><br> -against- <br><br> UMG RECORDINGS, INC., a Delaware corporation, <br><br> Defendant. | Civil No. 08 Civ. 7113 (PKC) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT UMG RECORDINGS, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................ 1

II.   FACTUAL BACKGROUND ........................................................ 3

     A.     The 1985 Agreement And Its Basic Royalty Dichotomy ....................... 3

     B.     The 1985 Agreement's Provisions Concerning "New Record Configurations" ................................................................................. 4

     C.     The 1994 Amendment's New Provisions Governing Royalty Rates For Compact Discs ....................................................................... 5

     D.     Plaintiffs' Claims In This Case ...................................................... 6

III.   DISCUSSION ............................................................................ 7

     A.     Legal Standard Governing Motions For Judgment On The Pleadings ................. 7

     B.     The Legal Effect Of The 1985 Agreement And 1994 Amendment Must Be Determined By The Court Without Resort To Extrinsic Evidence ...................... 8

     C.     Plaintiffs' First Cause Of Action Fails To Allege A Breach Of The 1985 Agreement's Royalty Provisions For The Exploitation Of Sound Recordings In The Form Of Permanent Digital Downloads Or Mastertones ........ 9

         1.     Section 3.06 Of The 1985 Agreement Does Not Apply To The Sale Of Sound Recordings In Digital Configurations ................................ 10

         2.     The Reasoning Of Allman, et al. v. *Sony BMG Music Entertainment* Extends To This Action .................................... 12

     D.     Plaintiffs' Second Cause of Action Fails Because UMG Has Satisfied Its Renegotiation Obligation Concerning Compact Discs. ........................ 14

IV.   CONCLUSION .......................................................................... 16

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Allen v. WestPoint-Pepperell, Inc.,*
    945 F.2d 40 (2d Cir. 1991)....................................................................................7

*Allman v. Sony BMG Music Entertainment*
    No. 06 CV 3252 (GBD), 2008 WL 2477465 (S.D.N.Y. June 18, 2008).................2, 12, 13, 14

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544, 127 S.Ct. 1955 (2007)................................................................7, 13

*Broder v. Cablevision Sys. Corp.,*
    418 F.3d 187 (2d Cir. 2005)................................................................................8

*Cleveland v. Caplaw Enterprises,*
    448 F.3d 518 (2d Cir. 2006)................................................................................7

*Glasser v. Cohen,*
    No. 05 Civ. 6993(DAB), 2008 WL 4104024 (S.D.N.Y. Aug. 28, 2008)................................8

*Iqbal v. Hasty,*
    490 F.3d 143 (2d Cir. 2007)................................................................................7

*LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.,*
    424 F.3d 195 (2d Cir. 2005)................................................................................9

*Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Germany,*
    No. 05 Civ. 10669, 2007 WL 2822214 (S.D.N.Y. Sept. 27, 2007)....................................7

*Postlewaite v. McGraw-Hill, Inc.,*
    411 F.3d 63 (2d Cir. 2005)..................................................................................9

*Roth v. Jennings,*
    489 F.3d 499 (2d Cir. 2007)................................................................................7

*Subaru Distrib. Corp. v. Subaru of Am., Inc.,*
    425 F.3d 119 (2d Cir. 2005)................................................................................8

## STATE CASES

*Bailey v. Fish & Neave,*
    8 N.Y.3d 523 (2007)..........................................................................................9

*Beal Sav. Bank v. Sommer,*
    8 N.Y.3d 318 (2007)..........................................................................................9

*Reiss v. Financial Performance Corp.,*
    97 N.Y.2d 195 (2001)........................................................................................9

*Vermont Teddy Bear Co. v. 538 Madison Realty Co.,*
    1 N.Y.3d 470 (2004)..........................................................................................9

## TABLE OF AUTHORITIES
### (continued)

Page

*W.W.W. Assoc. v. Giancontieri,*
   77 N.Y.2d 157 (1990) ................................................................................................9

## FEDERAL RULES

Federal Rule of Civil Procedure 12(c) ..................................................................3, 7

## I.    **INTRODUCTION**

This case is another in a series of misguided attempts by the Allman Brothers Band to use the courts to obtain royalties on digital downloads well in excess of their negotiated contractual rates. This Court should not permit Plaintiffs[1] to proceed with this attempted end run-around the fair negotiation process. For the reasons described herein, this Court should grant Defendant UMG Recordings, Inc.'s ("UMG") motion for judgment on the pleadings, and dismiss Plaintiffs' first and second causes of action.[2]

Plaintiffs' first cause of action fails to state a claim upon which relief may be granted. The basic issue posed by Plaintiffs' first cause of action is which of two royalty rates in the governing contract apply to the sale of sound recordings in digital configurations, such as permanent downloads and mastertones: (1) the basic royalty provisions of the agreement that expressly govern the sale, through normal retail channels, of all record configurations "now or hereafter known", *see* Declaration of Elisabeth J. Neubauer in Support of UMG Recordings, Inc.'s Motion for Judgment on the Pleadings ("Neubauer Decl."), Exh. A, 1985 Agreement §§ 3.01, 3.02, 3.03, 3.04 & 7.02; or (2) a provision of the contract providing for royalties in the amount of 50% of net receipts for certain types of licensing arrangements. *Id.* at § 3.06. Looking to the plain language of the 1985 Agreement, the answer could not be more clear - the parties intended to and expressly provided for the contract's basic royalty provisions to cover the sale of new record configurations, such as permanent downloads and mastertones.

Section 3.06 of the 1985 Agreement provides for royalties in the amount of 50% of net receipts for certain specified licensing arrangements, and for any other "commercial usage" not otherwise provided for in the contract. *Id.* at § 3.06. The 1985 Agreement, however, unequivocally does provide for the "commercial usage" at issue in this case - the exploitation of sound recordings sold in the form of permanent digital downloads and mastertones. Section 3.04

---

[1] Plaintiffs are Gregory Lenoir Allman, Jaimoe F/K/A Johnny Lee Johnson, Claude Hudson Trucks P/K/A Butch Trucks and Forrest Betts P/K/A Dickey Betts ("Plaintiffs").
[2] UMG does not seek judgment on the pleadings on Plaintiffs' third cause of action.

of the 1985 Agreement provides that, unless and until the royalty rates on "new Record configurations" are renegotiated, the basic royalty provisions of the agreement in Sections 3.01 through 3.03 apply. *Id.* at § 3.04. Looking to Section 3.04 of the contract, at most, the parties have an agreement that royalty rates on new record configurations would be renegotiated. There is, however, no reasonable interpretation of the 1985 Agreement that squares with Plaintiffs' attempt to apply Section 3.06's 50% of net receipts provision to the sale of recorded music in digital configurations.

The United States District Court for the Southern District of New York previously rejected Plaintiffs' attempt to make a similar argument in pursuit of inflated royalties in *Allman v. Sony BMG Music Entertainment* ("*SonyBMG*"), No. 06 CV 3252 (GBD), 2008 WL 2477465 (S.D.N.Y. June 18, 2008). The same reasoning applied by the court to dismiss Plaintiffs' prior action supports dismissal of Plaintiffs' first claim for relief here. As in the *SonyBMG* case, the basic royalty provisions of the contract on their face apply to the sale of "Phonograph Records," the definition of which includes "[a]ny device *now or hereafter known*, on or by which sound may be recorded and reproduced." Neubauer Decl., Exh. A, 1985 Agreement § 7.02 (emphasis added). This definition incontrovertibly extends to digital music configurations. As the court held in *SonyBMG*, in light of such clear, forward-looking language, "the emergence of a new era of digital sound recordings does not afford plaintiffs the right, under the guise of contract interpretation, to rewrite the terms" of their contracts to obtain a more favorable royalty formula. *SonyBMG*, 2008 WL 2477465, at *2.

Plaintiffs' second cause of action likewise fails to state a claim upon which relief may be granted. Plaintiffs' contention that UMG has breached the 1985 Agreement through its purported failure to renegotiate royalty rates for compact discs released after 1994 is belied by the clear and unambiguous language of the parties' 1994 amendment to the 1985 Agreement (the "1994 Amendment"). The 1994 Amendment clearly modifies the parties' rights and obligations regarding the negotiation of royalty rates for the sale of compact discs, demonstrating that UMG irrefutably has satisfied all renegotiation obligations it may have had concerning compact disc

royalty rates.

As this Court can discern clearly from the plain language of the 1985 Agreement and the 1994 Amendment, which are referenced in the Complaint, described herein, and presented to this Court along with the Declaration of Elisabeth J. Neubauer in Support of UMG Recordings, Inc.'s Motion for Judgment on the Pleadings, Plaintiffs have failed to allege adequately that UMG has breached any obligation owing to Plaintiffs under the parties' agreement in either its first or second causes of action. For this reason, this Court must grant UMG's motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c).

## II.    FACTUAL BACKGROUND

### A.    The 1985 Agreement And Its Basic Royalty Dichotomy

Plaintiffs are members of the Allman Brothers Band, an influential and famous American rock and roll band. Compl. ¶ 2. In 1985, UMG, previously known as Polygram Records, Inc. ("Polygram"), entered into an agreement with Plaintiffs (the "1985 Agreement"), which granted UMG the right to exploit certain master recordings created by the Allman Brothers Band during the period from 1969 through 1980 ("Master Recordings"). *Id.*

The 1985 Agreement sets forth basic royalty provisions that apply to the sale of "Phonograph Records" through "Normal Retail Channels." Neubauer Decl., Exh. A, 1985 Agreement §§ 3.01-3.03. These basic royalty provisions provide for royalty rates on net sales ranging from 6% to 13%, depending on the record being sold, and where that record is being sold. *Id.*

By contrast, the 1985 Agreement provides, in Section 3.06, that a royalty rate in the amount of 50% of net receipts applies to:

> "(i) Records derived from Master Recordings hereunder sold through Non-Affiliated Third Party record clubs or similar sales plans operated by Non-Affiliated Third Party record clubs or similar sales plans operated by Non-Affiliated Third Parties, (ii) licenses of Master Recordings to Non-Affiliated Third Parties for sales of Records by such licensees through direct mail, mail order or in conjunction with TV advertising, including through methods of distribution such as 'key outlet marketing' (distribution through

-3-

> retail fulfillment centers in conjunction with special advertisements
> on radio or television), or by any combination of the methods set
> forth above or other methods, (iii) licenses of Master Recordings
> on a flat-fee basis and (iv) any other commercial usage not
> specifically provided for herein."

Neubauer Decl., Exh. A, 1985 Agreement § 3.06(a).

Section 3.06(a)(iv), upon which Plaintiffs' first cause of action relies, specifically excepts

from its reach all commercial usages covered by any other section of the 1985 Agreement

### B.    The 1985 Agreement's Provisions Concerning "New Record Configurations"

In 1985, when the parties entered into the central contract at issue in this case, record

companies and artists knew two things about the technology to deliver music to consumers: (1) it

would continue to evolve (as it had from shellac to vinyl to eight-tracks to cassettes to compact

discs) and (2) no one could accurately predict in 1985 what those new technologies would be in

the future.  Thus, even though the distribution of recorded music in permanent download and

mastertone configurations may not have been contemplated in 1985, Plaintiffs and UMG

expressly agreed in their 1985 Agreement that the contract's basic royalty terms would apply to

new and unanticipated technologies.  To that end, they defined "Phonograph Records," which are

subject to the basic royalty provisions in the contract, to include "[a]ny device *now or hereafter*

*known*, on or by which sound may be recorded or reproduced, which is manufactured or

distributed primarily for home and/or consumer and/or juke box use . . .."  *See* Neubauer Decl.,

Exh. A, 1985 Agreement § 7.02 (emphasis added).

As the Complaint alleges, the 1985 Agreement's basic royalty provisions apply to

"Phonograph Records," including new technologies, that are distributed through "Normal Retail

Channels."  Compl. ¶ 20; Neubauer Decl., Exh. A, 1985 Agreement §§ 3.01-3.03.  The

Agreement defines "Normal Retail Channels" as "[n]ormal retail distribution channels excluding

sales of Records described in paragraphs 3.04., 3.05., 3.06., 3.07. and 3.08. herein."  Neubauer

Decl., Exh. A, 1985 Agreement § 7.13.

Plaintiffs allege that Sections 3.05, 3.07, and 3.08 do not apply to the "digital exploitation

of recordings derived" from the Master Recordings.  Compl. ¶¶ 21, 29.  Plaintiffs instead aver

that Section 3.04 of the 1985 Agreement, which covers all sales "in the form of compact discs or other new Record configurations," Neubauer Decl., Exh. A, 1985 Agreement § 3.04, applies to the distribution of sound recordings in digital configurations such as permanent downloads and mastertones. Compl. ¶¶ 20, 33. Section 3.04 of the Agreement provides:

> With respect to Net Sales of Records sold in the form of compact discs or other new Record configurations, [UMG] shall have the option to accrue, at its sole discretion, with respect to each such Record, either a royalty equal to the same dollars-and-cents (or other currency) royalty amount as is accrued hereunder with respect to an equivalent Record not in the form of a compact disc or other new Record configuration, or a Base of such compact disc or other new Record configuration as the percentage of the Royalty Base utilized to compute the royalty for the equivalent Record not in the form of a compact disc or other new Record configuration. The provisions listed above shall apply for a period of three (3) years from the release of each Record in the form of a compact disc or other new Record configuration. Thereafter, the royalty for such Record in compact disc or other new Record configuration shall be renegotiated in good faith, taking into account, among other things, the then-prevailing industry standards. Notwithstanding anything to the contrary contained herein, [UMG] shall have the continuing right to release Compact Discs embodying Artist's performances prior to the completion of such negotiations."

Neubauer Decl., Exh. A, 1985 Agreement at § 3.04.

Section 3.04 thereby provides that until and unless the royalty rates for compact discs and/or other "new Record configurations", such as digital music configurations, are renegotiated, UMG may, at its option, apply the basic royalty provisions of the contract to sales of recordings in such configurations. Section 3.04 does not allow Plaintiffs to unreasonably seek royalties in excess of "then-prevailing industry standards", as they seek to do in this case.

## C.   The 1994 Amendment's New Provisions Governing Royalty Rates For Compact Discs

As the music industry further evolved, and compact disc sales became the primary mechanism through which UMG and others distributed sound recordings to the consuming public, the parties revisited their agreement on compact disc royalty rates. On June 20, 1994, the

parties entered into the 1994 Amendment, which modified the terms of the 1985 Agreement, and set forth renegotiated royalty rates for compact discs sold after December 31, 1993. Neubauer Decl., Exh. B, 1994 Amendment. The 1994 Amendment refers to the 1985 Agreement, and provides that "[n]otwithstanding anything to the contrary expressed or implied in the Agreement, including without limitation paragraph 3.04 of the Agreement, the following shall constitute the further understanding of the parties." *Id.* at 1. The contract then goes on to set forth applicable royalty rates for sales of sound recordings "in the form of compact discs *after* December 31, 1993." *Id.* at 1-3 (emphasis added). The allegations in Plaintiffs' Complaint, which contend that the 1994 Amendment dealt only with compact discs that had been released up until December 31, 1993, therefore clearly are contrary to the plain terms of the 1994 Amendment. *See id.*; *compare* Compl. ¶ 32. The 1994 Amendment indisputably modifies the royalty terms of the 1985 Agreement concerning royalty rates for all sales after December 31, 1993 of compact discs containing content derived from the Master Recordings, regardless of whether the albums embodied by such compact discs were initially released before *or* after December 31, 1993. *Id.*

### D.     **Plaintiffs' Claims In This Case**

In their Complaint, Plaintiffs have alleged three causes of action for breach of the 1985 Agreement. UMG only moves for judgment on the pleadings on the first two causes of action. Plaintiffs' first cause of action alleges that UMG has breached a purported obligation under § 3.06(a) of the 1985 Agreement to compute royalties to Plaintiffs from the sale of sound recordings in digital configurations according to the 50% of net receipts royalty provision. Compl. ¶¶ 35-39. Plaintiffs' second cause of action alleges that UMG has breached a purported obligation under § 3.04 of the 1985 Agreement to renegotiate in good faith the royalty rates for the sale of recordings in the form of compact discs. Compl. ¶¶ 40-46. Plaintiffs' third cause of action, on which UMG has not moved for judgment on the pleadings (although it disputes the allegations contained therein), alleges that UMG has breached a purported obligation under § 3.04 of the 1985 Agreement to renegotiate in good faith the royalty rates for the sale of permanent digital downloads and mastertones. Compl. ¶¶ 47-53.

### III.    DISCUSSION

### A.    Legal Standard Governing Motions For Judgment On The Pleadings

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed - but early enough not to delay trial - a party may move for judgment on the pleadings." For a complaint to survive judgment on the pleadings, and concomitant dismissal, under Rule 12(c), the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007); *see Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 521 (2d Cir. 2006) ("The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim."). In other words, a plaintiff must satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S.Ct. at 1964-65 (internal quotation marks and alterations omitted).

Further, in deciding a motion for judgment on the pleadings, the court "must accept as true all of the factual allegations set out in plaintiff's complaint, draw inferences from those allegations in the light most favorable to plaintiff, and construe the complaint liberally." *Roth v. Jennings*, 489 F.3d 499, 510 (2d Cir. 2007) (citation omitted). However, "[g]eneral, conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint." *Mortimer Off Shore Servs., Ltd. v. Fed. Republic of Germany*, No. 05 Civ. 10669, 2007 WL 2822214, at *7 (S.D.N.Y. Sept. 27, 2007) (internal quotation marks and alterations omitted).

Moreover, in ruling on a Rule 12(c) motion, a court may consider the complaint as well as any additional documents incorporated into or appended to the complaint. *See Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). Thus, this Court should consider the

1985 Agreement and 1994 Amendment expressly referenced in the Complaint in ruling on UMG's motion. *See Glasser v. Cohen*, No. 05 Civ. 6993(DAB), 2008 WL 4104024, at *4 n.4 (S.D.N.Y. Aug. 28, 2008) ("under a Rule 12(b)(6) standard, the agreements referenced by the Complaint would have been reviewed by the Court"); Neubauer Decl., Exhs. A & B.

Looking to the allegations in the Complaint, and the plain language of the parties' 1985 Agreement and 1994 Amendment, Plaintiffs clearly have not, and indeed cannot, state a viable breach of contract claim in either their first or second causes of action. Accordingly, this Court should grant judgment on the pleadings for UMG and dismiss Plaintiffs' first and second causes of action with prejudice.

**B.    The Legal Effect Of The 1985 Agreement And 1994 Amendment Must Be Determined By The Court Without Resort To Extrinsic Evidence.**

Plaintiffs' claims are rooted in their self-serving misinterpretation of the contracts governing the parties' relationship - the 1985 Agreement and the 1994 Amendment, which modifies the parties' obligations under the 1985 Agreement vis-à-vis compact discs. To state a claim upon which relief may be granted, Plaintiffs cannot simply allege that UMG breached the 1985 Agreement's royalty provisions; they must plead facts about UMG's conduct, which, if true, would violate the Agreement's terms as a matter of law. *See Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 198 (2d Cir. 2005) (upholding dismissal of breach of contract claim where plaintiff failed to allege that Cablevision engaged in conduct that would actually have been in breach of the customer agreement). While the Court must accept Plaintiffs' factual allegations as true, the Court should not blindly accept Plaintiffs' "allegations . . . as to how to construe" the terms of the Agreements. *See Subaru Distrib. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005); *see also Broder,* 418 F.3d at 196 ("Insofar as the complaint relies on the terms off Cablevision's consumer agreement . . . we need not accept its description of those terms, but may look to the agreement itself.").

The 1985 Agreement unambiguously provides that the interpretation and legal effect of the contract is governed by New York law. Neubauer Decl., Exh. A, 1985 Agreement § 8.05.

Under New York law, the interpretation of an unambiguous contract presents a question of law for the court to resolve without resort to extrinsic evidence. *LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 205 (2d Cir. 2005); *Postlewaite v. McGraw-Hill, Inc.*, 411 F.3d 63, 67 (2d Cir. 2005); *see also Beal Sav. Bank v. Sommer,* 8 N.Y.3d 318, 324 (2007) ("Construction of an unambiguous contract is a matter of law . . .") (citing *Vermont Teddy Bear Co. v. 538 Madison Realty Co.*, 1 N.Y.3d 470, 475 (2004); *W.W.W. Assoc. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990)).

A clear, complete contract should be interpreted by looking within the four corners of the document. It should be enforced according to its terms by reading the document as a whole, and construing it so as to give full meaning and effect to the material provisions. *See Bailey v. Fish & Neave,* 8 N.Y.3d 523, 528 (2007); *Beal Sav. Bank*, 8 N.Y.3d at 324-25. Courts "may not by construction add or excise terms, nor distort the meaning of those used and thereby make a new contract for the parties under the guise of interpreting the writing." *Bailey*, 8 N.Y.3d at 528 (quoting *Vermont Teddy Bear*, 1 N.Y.3d at 475); *Reiss v. Financial Performance Corp.*, 97 N.Y.2d 195, 199 (2001).

Accordingly, this Court can and should look to the plain language of the 1985 Agreement and the 1994 Amendment in ruling on UMG's motion for judgment on the pleadings.

**C.      Plaintiffs' First Cause Of Action Fails To Allege A Breach Of The 1985 Agreement's Royalty Provisions For The Exploitation Of Sound Recordings In The Form Of Permanent Digital Downloads Or Mastertones.**

Plaintiffs' first cause of action for breach of contract is based entirely on their misreading of the clear language of the 1985 Agreement, and specifically their misapplication of Section 3.06 of the Agreement. Contrary to the allegations in Plaintiffs' Complaint, under the clear terms of the 1985 Agreement, UMG is *not* obligated to calculate royalties at an inflated rate of 50% of net receipts for the sale of sound recordings in digital configurations pursuant to Section 3.06 of the 1985 Agreement. Rather, as Plaintiffs' expressly recognize in their Complaint, Section 3.04, which deals with the royalty treatment for such "new Record configurations," mandates application of the basic royalty provisions in Sections 3.01 through 3.03 of the 1985

Agreement unless the rates for the sale of such "new" configurations subsequently are renegotiated. *See* Compl. ¶¶ 23, 33, 48.

        1.     **Section 3.06 Of The 1985 Agreement Does Not Apply To The Sale Of Sound Recordings In Digital Configurations.**

As is clear from the unambiguous language of the 1985 Agreement, Section 3.06 has nothing to do with the digital music transactions at issue in this lawsuit. In substance, Section 3.06 provides that a royalty rate of 50% of net receipts applies to: (i) records sold through non-affiliated third-party record clubs or similar plans; (ii) licenses to non-affiliated third parties for sale through direct mail, mail order, or in conjunction with television advertising (or a combination of these methods); (iii) licenses on a flat-fee basis (e.g., when a recording is licensed for use in a motion picture or television commercial for a "flat-fee"); and (iv) "any other commercial usage not specifically provided for herein." Neubauer Decl., Exh. A, 1985 Agreement § 3.06(a). Plaintiffs cannot possibly contend that the sale of recorded music in digital configurations through online music stores at issue in this case falls within categories (i), (ii) or (iii). *Id.* Instead, as they have indicated in their correspondence with the Court, they assert that such sales fall within category (iv).

This is not a reasonable reading of the clear language of the 1985 Agreement. The commercial usage at issue here – sale of recorded music in digital configurations through online third-party vendors - is addressed specifically in prior sections of the contract. Section 3.04 provides that the basic royalty provisions set forth in Sections 3.01 through 3.03 of the 1985 Agreement apply to "compact disc[s] or other such new Record configurations" (although these rates may be renegotiated for compact discs and new configurations under the parameters set forth in Section 3.04). *Id.* at § 3.04. The definition of "Records" in the 1985 Agreement includes "[a]ny device now or hereafter known" (*id.* at 7.02), and thus, recorded music sold as a permanent download or as a mastertone clearly is just such a "new Record configuration." Because the express language of the contract clearly provides that the basic royalty rates (or any rate renegotiated thereafter) apply to recorded music in "new Record configurations", the

transactions at issue cannot fall within Section 3.06's catch-all provision. They are "specifically provided for" within the contract. *Id.* at § 3.06(a). Thus, Plaintiffs' first cause of action, which is based on their contention that Section 3.06 applies to sales of recorded music in digital configurations, must fail.

Plaintiffs not only misapply Section 3.06, but also confuse and conflate Sections 3.04 and 3.06. These are two independent provisions of the 1985 Agreement. Plaintiffs allege that Section 3.04 of the 1985 Agreement takes all sales of recorded music in digital configurations out of the royalty provisions pertaining to the sale of "Phonograph Records" through "Normal Retail Channels." Compl. ¶¶ 20, 29. Specifically, Plaintiffs look to the contract's definition of "Normal Retail Channels," which is defined as "excluding sales of Records described in paragraphs 3.04, 3.05, 3.06, 3.07, and 3.08" of the 1985 Agreement. *Id.* ¶¶ 20, 29; Neubauer Decl., Exh. A, 1985 Agreement § 7.13. Plaintiffs allege that Sections 3.05, 3.07, and 3.08 do not apply to the "digital exploitation of recordings derived" from the Master Recordings. Compl. ¶¶ 21, 29. Plaintiffs instead argue that because the sale of recorded music in digital configurations is covered by Section 3.04, it is subject to Section 3.06's 50% of net receipts royalty provision. *Id.* ¶ 29. This is a nonsensical reading of the 1985 Agreement. Just because a recording may fall within Section 3.04 does not mean that it is subject to the 50% of net receipts royalty provision in Section 3.06. And indeed, as explained *supra,* because the sales of recorded music in digital configurations at issue in this case fall within Section 3.04 (and thus are "specifically provided for"), they *cannot* be subject to Section 3.06.[3]

Plaintiffs' first breach of contract claim is rooted entirely in Plaintiffs' contrived attempt to apply Section 3.06 to the sale of recorded music in digital configurations. As explained, this reading is completely at odds with the plain language of the 1985 Agreement. Because Plaintiffs' first cause of action cannot survive in light of the clear language of the 1985 Agreement, this Court should grant UMG judgment on the pleadings on Plaintiffs' first cause of

---

[3] Similarly, sales of compact discs also fall within Section 3.04, and even Plaintiffs do not contend that they are subject to the 50% of net receipts provision.

action.

      2.      **The Reasoning Of *Allman, et al. v. Sony BMG Music Entertainment* Extends To This Action.**

Significantly, the exact issue of what royalty rates apply to sound recordings sold in digital configurations already has been litigated in a virtually identical suit filed by and decided against the Plaintiffs in the Southern District of New York. In *Allman v. Sony BMG Music Entertainment*, No. 06 CV 3252 (GBD), 2008 WL 2477465 (S.D.N.Y. June 18, 2008) ("*SonyBMG*"), as here, Plaintiffs sued a record company on a breach of contract theory seeking payment of royalties on digital downloads at a rate of 50% of the net receipts. The District Court (Honorable George B. Daniels) dismissed Plaintiffs' complaint, finding that the plain language of the parties' contracts precluded application of the 50% of net receipts royalty rate provision to sound recordings sold in the form of permanent digital downloads. Judge Daniels' reasoning applies with full force to Plaintiffs' first claim in this case.

The material provisions of the Allman Brothers Band contracts in the two cases are largely the same. Plaintiffs' complaint in *SonyBMG*, like their Complaint here, alleged that they were entitled to royalties in the amount of 50% of net receipts based on a provision in the contracts providing for royalties on licenses of sound recordings. *Id.* at *1. However, there, as here, the agreements set forth significantly lower basic royalty rates for sales of "Phonograph Records" derived from the subject master recordings. In doing so, the contracts at issue in *SonyBMG*, like the 1985 Agreement, define "Phonograph Records" in a manner that expressly includes future configurations not contemplated at the time the contracts were formed. *Id.* at *2 ("all forms of reproductions, *now or hereafter known*, manufactured or distributed primarily for home use.") (internal quotations omitted); Neubauer Decl., Exh. A, 1985 Agreement ¶ 7.02 (defining "Phonograph Records" as "[a]ny device *now or hereafter known*, on or by which sound may be recorded and reproduced, which is manufactured or distributed primarily for home and/or consumer and/or juke box use . . .") (emphasis added). Looking to the broad, forward-looking definition of "Phonograph Records", Judge Daniels concluded that "the plain language" of the

basic royalty provisions applies to "recordings that are distributed to consumers via transmission of digital music files." *SonyBMG*, 2008 WL 2477465, at *2. In reaching this conclusion, Judge Daniels correctly held that "the emergence of a new era of digital sound recordings does not afford plaintiffs the right, under the guise of contract interpretation, to rewrite the terms of the contracts in order to secure a more favorable, or what they consider to be a more equitable, royalty formula." *Id.* The same result should follow concerning Plaintiffs' first cause of action; this court should dismiss it.

Central to Judge Daniels' decision is the notion that distribution of recorded music in digital configurations through online third-party retail vendors is the same in every material way as distribution of recorded music on vinyl records, cassette tapes, compact discs, or any other physical configuration through traditional "brick and mortar" retail vendors. *See id.* Plaintiffs attempt to confuse this basic truth by inadequately alleging in conclusory fashion that the distribution of recorded music in digital configurations through third-party vendors is tantamount to "licensing." (Compl. ¶ 27.) *See Twombly*, 127 S.Ct. 1959 (a plaintiff's pleading obligation requires "more than labels and conclusions"). However, from a contractual (and economic) perspective, these sales are nothing more complicated than the sale of "Phonograph Records" to customers, albeit in new configurations. The online music stores run by Apple, Amazon.com and others, are no different than "brick and mortar" stores such as Best Buy or Walmart, or Tower Records and Sam Goody before them, that bought "Phonograph Records" in the form of compact discs or cassettes from Polygram and UMG and resold them to consumers during the past two decades. The only significant distinction between the Apples of today and the Tower Records of yesterday is that the newly-developed online stores are more efficient. Rather than UMG manufacturing compact discs, cassettes and vinyl albums, and then storing them in a warehouse until they are shipped to a retailer that has ordered them, now UMG can sell a digital recording to an online music retailer who then instantaneously can re-sell the recording in digital form to the consumer who has ordered it. This advancement in technology does not change the fundamental nature of the transaction. Thus, as Judge Daniels found in the *SonyBMG* action, in

this case there is no reason why the basic royalty provisions for the sale of Records in the 1985 Agreement should not apply to the sale of recorded music in digital configurations through online vendors. *See SonyBMG*, 2008 WL 2477465, at *2 ("the emergence of a new era of digital sound recordings does not afford plaintiffs the right, under the guise of contract interpretation, to rewrite the terms" of their contracts to obtain a more favorable royalty formula).

Plaintiffs in this case again have failed to state a breach of contract claim based on UMG's failure to pay Plaintiffs 50% of net receipts from sales of recorded music in digital configurations. The plain language of the contract cannot be squared with the allegations in their Complaint, and judgment on the pleadings must be granted for UMG on Plaintiffs' first cause of action.

### D.     Plaintiffs' Second Cause of Action Fails Because UMG Has Satisfied Its Renegotiation Obligation Concerning Compact Discs.

Through the 1994 Amendment, UMG satisfied all renegotiation obligations it had concerning compact disc royalty rates under the 1985 Agreement. For this reason, Plaintiffs' second cause of action for breach of contract, which alleges that UMG has breached the 1985 Agreement by failing to renegotiate royalty rates for compact discs derived from the Master Recordings released after the effective date of the 1994 Amendment (Compl. ¶ 41), fails to state a claim upon which relief may be granted and must be dismissed.

Plaintiffs specifically claim that UMG has violated Section 3.04 of the 1985 Agreement, which reads in pertinent part:

> With respect to Net Sales of Records sold in the form of compact discs . . ., [UMG] shall have the option to accrue, at its sole discretion, with respect to each such Record, either a royalty equal to the same dollars-and-cents (or other currency) royalty amount as is accrued hereunder with respect to an equivalent Record not in the form of a compact disc . . ., or a Base of such compact disc . . . as the percentage of the Royalty Base utilized to compute the royalty for the equivalent Record not in the form of a compact disc . . . The provisions listed above shall apply for a period of three (3) years from the release of each Record in the form of a compact disc . . . Thereafter, the royalty for such Record in compact disc . . . shall be renegotiated in good faith, taking into account, among other things, the then-prevailing industry standards.

> Notwithstanding anything to the contrary contained herein, [UMG] shall have the continuing right to release Compact Discs embodying Artist's performances prior to the completion of such negotiations.

Neubauer Decl., Exh. A, 1985 Agreement at § 3.04.  However, the renegotiation obligation imposed by Section 3.04 of the 1985 Agreement was obviated by the 1994 Amendment, and thus is irrelevant to the adjudication of Plaintiffs' second cause of action.

On June 20, 1994, the parties entered into the 1994 Amendment, which, among other things, modified the 1985 agreement with respect to the royalty rates applicable to the sale of compact discs.  As expressly set forth at the outset, the 1994 Amendment "shall constitute the further understanding of the parties," "[n]otwithstanding anything to the contrary expressed or implied in the [1985] Agreement, *including without limitation paragraph 3.04 of the [1985] Agreement*."  Neubauer Decl., Exh. B, 1994 Amendment at 1 (emphasis added).  The 1994 Amendment then goes on to set forth with specificity renegotiated royalty rates for the sale of recordings "embodying performances by the Allman Brothers Band," "sold in the form of compact discs" "after December 31, 1993."  *See* Neubauer Decl., Exh. B, 1994 Amendment at 1-3.

This clear, unambiguous language, unequivocally replaced any ongoing renegotiation obligations UMG might have had under Section 3.04 of the Agreement with respect to the sale of compact discs.  The 1994 Amendment reflects a renegotiation of compact disc royalty rates, which was conducted after the parties had the benefit of almost a decade to reflect on the whether the basic royalty provisions of the 1985 Agreement should continue to apply to sales of compact discs containing recordings derived from the Master Recordings.  Moreover, on its face, the clear language of the contract provides that the renegotiated royalty rates set forth therein apply not only to compact discs released as of the date of the 1994 Amendment, but also to those released and sold *after* December 31, 1993.  *Id.*  The 1994 Amendment is not limited to already-released compact disc configurations, and no exception is made in the contract for later releases.

Plaintiffs, unhappy with their fairly negotiated rights, should not be permitted to use this

Court to circumvent a fairly-negotiated unambiguous contractual arrangement between the parties. Because UMG clearly has fulfilled its renegotiation obligation under the 1985 Agreement, as modified by the 1994 Amendment, this Court should not allow Plaintiffs to move forward with their second breach of contract claim for failure to renegotiate compact disc royalty rates. Judgment on the pleadings for UMG should be granted on Plaintiffs' second claim for relief.

## IV.    **CONCLUSION**

For the foregoing reasons, this Court should grant UMG's motion for judgment on the pleadings. Plaintiffs have failed to state a breach of contract claim upon which relief may be granted in both their first and second causes of action.

Dated: Los Angeles, California
       November 25, 2008

Respectfully submitted,

MUNGER, TOLLES & OLSON LLP

By: *Elisabeth J. Neubauer*
  Glenn D. Pomerantz (*pro hac vice*)
  Kelly M. Klaus (*pro hac vice*)
  Elisabeth J. Neubauer (EN 1379)
  355 South Grand Avenue
  Thirty-Fifth Floor
  Los Angeles, CA  90071-1560
  Tel: (213) 683-9100
  Fax: (213) 687-3702

  Andrew H. Bart, Esq. (AB 6724)
  JENNER & BLOCK LLP
  919 Third Avenue, 37th Floor
  New York, New York 10022
  (212) 891-1600

  Attorneys for Defendant
  UMG Recordings, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on November 25, 2008, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants.

Ross J. Charap
Paul Mathew Fakler
Amanda Jill Schaffer
Julie Stark
MOSES & SINGER LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-1299
rcharap@mosessinger.com
pfakler@mosessinger.com
aschaffer@mosessinger.com
jstark@mosessinger.com
mbyron@mosessinger.com

_____
Elisabeth J. Neubauer